# DECLARATION OF SCOTT SOURA

I, Scott Soura, being duly sworn, declare and state as follows:

1. I am the Manager of Roundhill Group LLC, ("Plaintiff"). In this capacity, I am familiar with the day-to-day operations, business and the financial affairs of Plaintiff. I am duly authorized by Plaintiff to speak on its behalf and to submit this Declaration. I know each of the following facts to be true of my own personal knowledge and, if called as a witness, I could and would competently testify with respect thereto.

2. I submit this Declaration in support of Plaintiff's Notice of Motion and Motion For: (1) Emergency Issuance of a Temporary Restraining Order; and (2) Issuance of a Preliminary Injunction With a Hearing on Expedited Basis Pursuant To FRBP 7065(b) (the "Motion"). All capitalized terms not otherwise defined in this Declaration shall have the meaning ascribed to same in the Motion.

3. Pursuant to the amended Sale Order (docket #983) entered on October 13, 2020, Plaintiff purchased the Acquired Assets (as defined in the Roundhill APA) for $13,000,000.00. A true and correct copy of the amended Sale Order, including the Asset Purchase Agreement is attached as **Exhibit A**.

4. Plaintiff timely and fully paid the $13,000,000.00 purchase price under the Roundhill APA, and has timely and completely satisfied all other obligations under the Roundhill APA except as waived or excused by virtue of Defendants' numerous breaches of the Roundhill APA detailed in the complaint filed initiating the Adversary Action.

5. The Acquired Assets include, but are not limited to, "all of [Defendants'] owned (i) equipment, machinery, furniture, fixtures and improvements, tooling and spare parts and any other tangible personal property (including without limitation consumables located at the premises of

the Business) that is in any of the foregoing cases primarily used for the ownership, operation or management of the Business (the "Owned FF&E"), and (ii) to the extent assignable, rights to any warranties and licenses received from manufacturers and sellers of the Owned FF&E."

6. At the time Plaintiff and Defendants closed under the Roundhill APA, a considerable amount of Acquired Assets constituting the Huntsville Acquired Property were housed at, on, or in the Huntsville Facility. Attached hereto as **Exhibit B** is a true and correct list and summary of the Huntsville Acquired Property.

7. Sturm. Ruger & Company, Inc. ("Ruger") entered into that certain asset purchase agreement (the "Ruger APA") whereby it acquired certain equipment and machines used in connection with Remington's "Marlin" firearms business. The Ruger APA, at Section 1.6(b), creates obligations between Ruger and Defendants identical to those between Plaintiff and Defendants pursuant to Section 1.7(b) of the Roundhill APA. Additionally, Section 3.2(a) of the Ruger APA is identical to Section 3.2(a) of the Roundhill APA.

8. The Huntsville Acquired Property is included within the Acquired Assets that Defendants are required to "deliver or cause to be delivered" to Plaintiff.

9. Plaintiff and Defendants entered into an Amendment #2 to the Roundhill APA, adding Section 3.2(k) to the Roundhill APA, which provided:

> *Timely Removal. Notwithstanding the provisions of Section 3.2(a) and Section 3.2(i) of this Agreement, if Buyer has not physically removed all of the Huntsville Other Assets from the Owned Real Property at Huntsville, Alabama by the close of business, Central Time, on Monday, February 15, 2021, then Buyer and Seller hereby agree that Buyer must remove all of the Huntsville Other Assets from the Owned Real Property at Huntsville, Alabama by no later than the close of business, Central Time, on the date that is thirty (30) calendar days after the delivery by Seller, on or after Saturday, January 16, 2021, of a Notice to Buyer demanding removal by Buyer of the Huntsville Other Assets. If Buyer has not removed all Huntsville Other Assets on the Owned Real Property at Huntsville, Alabama by the close of business, Central Time, on the thirtieth (30th) calendar day after delivery of such Notice from Seller, then any*

> *Huntsville Other Assets remaining at the Owned Real Property at Huntsville, Alabama shall be automatically and permanently forfeited to Seller or Seller's assignees, and neither Seller nor any assignee thereof will thenceforth have any obligation to Buyer (or any assignee or successor thereof) with respect to any and all such remaining Huntsville Other Assets.*

Attached hereto as **Exhibit C** is a true and correct copy of Amendment #2 to the Roundhill APA.

10. Pursuant to an agreement among and between Plaintiff and Defendants, the deadline for removal of the Huntsville Acquired Property was extended to 5:00 pm on February 26, 2021 (the "Removal Deadline") so the parties could continue settlement discussions to resolve issues relating to, among other things, Plaintiff's assertion that the Removal Deadline under Section 3.2(k) is inapplicable and unenforceable due to Defendants' failure to make the Huntsville Acquired Property available for removal under Section 1.7(b) or Section 3.2(a).

11. Up to and including March 4, 2021, Plaintiff and Defendants continued to negotiate in good faith to resolve the dispute regarding the Removal Deadline and the Huntsville Acquired Property. The parties hit an impasse in their negotiations on March 4, 2021, necessitating the above captioned adversary action to be initiated by Plaintiff on March 5, 2021 (the "Adversary Action"). Notwithstanding the filing of the Adversary Action, the parties continued to pursue a mutually agreeable resolution of the disputes among and between each other. However, and after the parties hit yet another settlement impasse after twelve days of good faith efforts, on March 17, 2021 it became apparent to me that an immediate resolution of the issues raised in the Adversary Action would not be resolved in the foreseeable future without Court intervention, which predicated the filing of this Motion.

12. Due to unexpected delays that were caused primarily by logistical issues and decisions of Defendants, an actual and judiciable dispute has arisen as to the enforceability of Section 3.2(k) and the Removal Deadline. Specifically, Plaintiff is in the position of potentially

losing all of Huntsville Acquired Property based upon Defendants' failure to comply with Sections 1.7(b) and 3.2(a) of the Roundhill APA, coupled with unilateral actions taken by Defendants to seriously jeopardize Plaintiff's ability to operate its firearms business.

13. Plaintiff's principals made frequent visits to the Huntsville Facility, but were unable to get Defendants to honor their obligations under Section 1.7(b) of 3.2 (a) of the Roundhill APA. Furthermore, Plaintiff's representatives and agents were on site full-time at the Huntsville Facility for several weeks attempting to work with Defendants and its staff to remove the Huntsville Acquired Property, but were met with onerous conditions and unnecessary restrictions imposed by Defendants that have made it unduly difficult, if not impossible, to remove the Huntsville Acquired Property.

14. On January 18, 2021, Defendants demanded that Plaintiff remove all Huntsville Acquired Property from the Huntsville Facility no later than February 17, 2021. An actual and substantial controversy has arisen between Plaintiff and Defendants due to Defendants' failure to comply with Sections 1.7(b) and 3.2(a) of the Roundhill APA necessitating the immediate issuance of injunctive relief.

15. Even if Defendants had fully and completely decommissioned the Huntsville Property by February 26, 2021 (which they had not), Plaintiff would have still been incapable of meeting the Removal Deadline for two reasons. First, many important pieces of the Huntsville Acquired Property require removal of walls or fixtures affixed to the Huntsville Facility. Based upon the plain language of Section 1.7(b), removal of the impediments at the Huntsville Facility is arguably Defendants' obligation and duty. Notwithstanding, Plaintiff began the necessary removal of two portions of a non-load bearing wall at the Huntsville Facility, but was instantly met with reflective antagonism from Defendants. From that point forward, Defendants placed

vague, unnecessary and onerous restrictions on Plaintiff's necessary removal of walls and fixtures of the Huntsville Facility – compliance with which would have been impossible by the Removal Deadline. Attached hereto as **Exhibit D** is a true and correct copy of an email I received from Defendants' representative Emile Buzaid detailing the restrictions Defendants placed upon Plaintiff's removal of the Huntsville Acquired Property. Second, removal of the Huntsville Acquired Property (above-and-beyond removal of certain walls at the Huntsville Facility) will take a team of 10-12 specialized movers a total of thirty (30) fulltime and consecutive working days. Given the extremely narrow window of time between February 26, 2021 and the Removal Deadline, Plaintiff could not have timely removed the Huntsville Acquired Property. Therefore, even if Defendants had hypothetically honored their duties and obligations under Section 1.7(b) and 3.2(a), it would have been too little too late – as Defendants would not have provided Plaintiff with sufficient time to effectuate and complete removal of the Huntsville Acquired Property by the Removal Deadline.

16. When Plaintiff entered into the second amendment to the Roundhill APA, Plaintiff relied upon the fact that Defendants would still fully comply with their contractual obligations – including but not limited to those contained within Section 3.2(a).

17. Plaintiff will be irreparably harmed if Defendants are not prohibited from selling or disposing of the Huntsville Acquired Property, as well as if Defendants are not immediately required to deliver the Huntsville Acquired Property and make same available for removal by Plaintiff.

18. In late September of 2020, Plaintiff acquired Remington's non-Marlin firearms business from Defendants so it could continue manufacturing and selling some of the most iconic and sought after American-made firearms. Part and parcel to Plaintiff's continued manufacturing

and sale of Remington-brand firearms is possession and use of the Huntsville Acquired Property. Specifically, the Huntsville Acquired Property is necessary to manufacture not only components and parts for virtually all Remington firearms, it is also necessary to manufacture entire lines of Remington products.

19. While it is true Plaintiff purchased the Ilion facility, which contained numerous machines and pieces of equipment used for the manufacturing of firearms, the Huntsville Acquired Property is unique and has no Ilion counterpart.

20. If Plaintiff is not immediately granted the injunctive relief sought herein, Plaintiff will be unable to reopen the Ilion facility and will be unable to operate its firearms business. If Defendants' required delivery of the Huntsville Acquired Property is delayed until judgment is entered in the Adversary Action, Plaintiff and the firearm business it operates will be forever destroyed – from the irreparable loss of business opportunity, to the irreparable loss of good will, to the total loss of the business itself – Plaintiff may find itself in a bankruptcy of its own without immediate relief.

21. Irreparable harm to Plaintiff will also result from not bringing decommissioned Huntsville Acquired Property back on line as soon as possible due to resulting damage to the equipment's seals, gaskets and internal components. While the aforementioned damage to the Huntsville Acquired Property may be reparable, such repairs will cause significant delays jeopardizing Plaintiff's business in the same way a delay associated with entry of judgment in the Adversary Action will. Due to the specialized and unique nature of the individual pieces of equipment, coupled with required calibration of same, it will take between twelve (12) and fourteen (14) months to replace the Huntsville Acquired Property – a delay which will also cause the irreparable harm detailed in this Declaration.

22. By the time judgment is entered in the Adversary Action, Plaintiff will be irreparably harmed through the total loss of its business – thus rendering any the judgment it obtains against Defendants meaningless.

23. I believe Plaintiff's business operations, its vendor relationships, and Plaintiff's employment opportunities for third-parties will be protected by the requested injunctions.

24. Attached hereto as **Exhibit F** is a true and correct copy of the complaint Plaintiff filed against Defendants, initiating the Adversary Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 17 day of March, 2021, at Trenton, NJ

Scott Soura